May 6, 1902.

### PETITION OF LACONIA STREET RAILWAY.

The court may grant to a street railway company created by special charter the right to construct extensions and branches which provide a new system of roads and work fundamental changes in the business of the corporation.

Where an existing street railway company asks leave to construct extensions and branches, the question whether it has financial ability or credit sufficient for the purpose is to be determined by the court in the first instance, as in the case of provisional corporations.

The court may authorize a street railway company created by special charter to raise money for the construction and equipment of extensions and branches by increasing its capital stock "within the limits prescribed by law"; and such limits are those fixed by statute in the case of similar corporations organized under the general law, or required by reasonable necessity, and not the amount authorized by the original charter.

Where the petition of a street railway company for leave to construct extensions and branches is referred for the purpose of determining the question whether the public good requires the proposed railroad, it is to be assumed that the intention and financial ability of the corporation to build have been established to the satisfaction of the court.

The petition of a street railway company for leave to construct extensions and branches should be accompanied by an attested copy of the record of proceedings of the corporation relating to the subject, and full and explicit affidavits, by persons having knowledge, as to facts not matters of record relevant to the questions to be determined by the court before the petition can be referred, and such questions may be decided upon this testi-

mony in the absence of objection; but if an issue be raised upon prelim-
inary questions by an objecting party in the proceeding, the matter will
ordinarily be sent to a master or referee for a hearing and finding of facts.

PETITION, for a determination of the question whether the pub-
lic good requires the building of an extension of the *Laconia
Street Railway.*

*Shannon & Young,* for the petitioners.

*Frank S. Streeter,* by leave of the court, for the Boston & Maine
Railroad.

CHASE, J.   The petitioner (formerly the Laconia and Lake
Village Horse Railroad; Laws 1893, *c.* 284, *s.* 1; Laws 1895,
*c.* 225, *s.* 1) was incorporated July 27, 1881, and empowered " to
construct, maintain, and use a railroad . . . from any point on
Main street or Court street in Laconia, over, along, and upon such
of the streets in said Laconia and in Gilford as may be necessary
for the public accommodation, to Lake Village in said Gilford, with
branches and side tracks to other parts of said towns." Manu-
script Laws, *vol.* 72, *p.* 665.   Its authorized capital is $100,000.
Laws 1893, *c.* 284, *s.* 3.   It is said that the corporation owns 8.87
miles of railway, all within the limits of Laconia, and that the
cost thereof was $108,098.59.   It desires to build an extension of
the railway through the towns of Belmont, Sanbornton, Tilton,
and Franklin to the boundary line between Franklin and Bos-
cawen, and a branch from Main street in Franklin to Webster
Lake, all of which it is estimated will cost $280,000; and the
petition is for a determination of the question whether the public
good requires the building of the same.   The proposed extension
is much longer than the corporation's present road.   The Boston
& Maine Railroad appear by leave of the court, and object to the
petition on the ground that the proposed extension and branch
are not such within the meaning of section 18, chapter 156, Pub-
lic Statutes, which provides that " if a railroad corporation desires
to build an extension of its railroad, or a branch railroad, it may
file in the office of the clerk of the supreme court of the county in
which its principal office is located a petition to the court for a
determination of the question, whether the public good requires
the building of such extension or branch "; and that the corpora-
tion may build the same if, in the course of the proceedings pre-
scribed for the purpose, this question is decided in its favor.   The
Boston & Maine Railroad say that the words " extension " and
" branch " were used in these provisions to describe additions to

the original railroad which are needed for a better fulfillment of the general objects of the corporation, and not additions which create a new system of railroads and work a complete revolution in the corporate purposes.

In support of the position, they say that chapter 156 makes no provision for amending the articles of association of corporations organized under it. The chapter makes no distinction in this respect between corporations created by special charters and corporations organized under the general law. Its language is, "if a railroad corporation desires to build an extension," etc.; that is, any railroad corporation however created. It applies to corporations organized under it, as well as to those created by special acts. The chapter originally applied to steam railroad corporations only; but by section 3, chapter 27, Laws 1895, the provisions of sections 1 to 20 are made applicable to corporations created for constructing, maintaining, and operating street railways, except as modified by the later act. This includes "all railway corporations authorized to lay and use any part of their railway tracks in public highways otherwise than for crossing purposes"; and consequently it includes the petitioner. Laws 1895, c. 27, ss. 1, 2.

If there were no provision in the chapter by which the stock of dissenting stockholders could be taken in case of an amendment of the charter against their objection, changing the business of the corporation, its absence would be weighty, if not conclusive, evidence that amendments of that kind were not within the purview of the statute; for, in that case, they could not be made without the unanimous consent of the stockholders. The act of 1883 (Laws 1883, c. 100) contained no provision of this kind, and it was held that a lease made under its authority by one railroad corporation to another, of the former's property and franchises for a term of ninety-nine years, was a fundamental change of the business of the corporation, and, being made without the unanimous consent of the stockholders, was invalid. *Dow* v. *Railroad*, 67 N. H. 1. See, also, *Jones* v. *Railroad*, 67 N. H. 119, 146. The act was amended in this particular, so far as the power to lease and form unions is concerned, by the act of 1889 (Laws 1889, c. 5, s. 1), and so far as the power to build extensions and branches is concerned by provisions of the Public Statutes. Now, "if any stockholder in a railroad corporation which has voted to build an extension or branch, or which has become a party to a lease or to a contract of union under the provisions of this chapter, shall dissent from the building of such extension or branch, or from such lease or union, the corporation in which he is a stockholder, in the case of building an extension or branch, . . . may apply by peti-

tion to any justice of the supreme court," and have the value of the stock, interest, or property right of dissenting stockholders determined; and upon the payment or tender of the amount determined, the stock becomes the property of the petitioner. P. S., *c.* 156, *ss.* 28–37. These provisions show that amendments of charters making fundamental changes in the business of corporations by providing for the building of extensions and branches were within the contemplation and intent of the legislature, the same as amendments providing for the making of leases or contracts of union. There is no difference in the provisions applying to these objects.

Another reason offered for the construction of the statute alleged by the Boston & Maine Railroad is the supposed absence of a requirement that the necessary capital stock shall be subscribed in the first instance. It is said that this shows that the extensions or branches intended are only such as can be made without changing the fundamental purpose of the corporation as originally chartered. It therefore becomes necessary to inquire whether there is an absence of such requirement. If there is not, the reason above suggested has no force. As previously stated, all the provisions of sections 1 to 20, of chapter 156, of the Public Statutes, are made applicable to street railway corporations. Section 18 provides as follows: "The petition [for an extension or branch] shall set forth the termini, gauge, general description, and probable cost of such extension or branch. The court, at a regular or adjourned law term, after notice and finding of the facts, and a hearing of the parties, as provided in sections nine, ten, eleven, twelve, and thirteen of this chapter, shall determine the question so presented." It will be observed that the facts to be set forth in the petition relating to the proposed extension or branch are substantially the same as those that are required to be set forth in the articles of association of a new corporation (P. S., *c.* 156, *s.* 2); and that the procedure upon the petition is that prescribed for a provisional corporation. *Ib., s.* 8. The ultimate question in both cases is, whether a corporation shall be authorized to build a new railroad; and the incidental questions must necessarily be similar. These facts account for the adoption of the same course of procedure in both cases, and will be of service in determining what the legislative intent was in respect to the immediate matter under consideration. Section 10 is as follows: "At the term to which the order of notice is made returnable, if it appears to the court that sufficient notice of the petition has been given, and that all preliminary steps have been taken and the capital stock has been subscribed by responsible parties, in good faith, with the intention of building the road, and if no sufficient

objection is made, the court shall refer the petition to the board of railroad commissioners or to a board of three referees appointed by the court, as they shall deem best, to find and report the facts bearing upon the petition."

This section requires the decision of four questions before the petition is referred, namely : (1) Whether sufficient notice has been given; (2) whether all preliminary steps have been taken; (3) whether the capital stock has been subscribed by responsible parties in good faith, with the intention of building the road; and (4) whether any objection made to the petition is sufficient. There is no inconsistency between questions 1, 2, and 4, and the nature of a petition for the right to build an extension or branch, that renders the questions inapplicable in such a proceeding. If the portion of the section represented by question 3 must be understood in a strict literal sense, it undoubtedly would not apply in all cases of petitions for extensions and branches. It is supposable that a corporation may have a sufficient surplus of capital to build the proposed extension or branch, or that it may have authority under the general laws and sufficient credit to raise the needed funds by a loan. It is also supposable that a corporation may be obliged to issue new stock to obtain the funds. The provision interpreted literally would be applicable in the latter case, but not in the two former cases. In interpreting the language, the object in view must be taken into consideration. However great the public demand for the road may be, it cannot be satisfied unless there is a *bona fide* intention to build it and sufficient financial resources to carry the intention into effect. The granting of authority to build to a corporation which has no intention of building, or insufficient financial resources or credit, would be worse than useless; it would defer the satisfaction of the public demand for two years (*Ib.*, ss. 7, 20), if it did not prevent it altogether. To avoid this contingency, the corporation is required to prove to the satisfaction of the court that it intends in good faith to build the proposed road, and has sufficient financial ability or credit for the purpose, before it can have the question of public good considered. There is the same necessity for the determination of these questions in the first instance, in the case of petitions by existing corporations for authority to build extensions and branches, that there is in the case of petitions by new corporations. Manifestly, the language of the section was intended to cover the necessity in both classes of cases. By adopting it for the extension class, the legislature intended that it should apply to the varying conditions of such cases, although in some cases it would have a figurative rather than a literal sense. If the description " capital stock . . . subscribed by responsible parties in good

faith " is not broad enough to cover the conditions in all extension
cases, it is reinforced by the " sufficient objection " clause, and
taken together they are applicable to all conditions that can arise
in such cases.

Section 19 provides that " if the court determine that the public
good requires the building of the extension or branch, the corpora-
tion shall file a copy of the petition and of the decision of the
court thereon in the office of the secretary of state, and shall
thereupon have authority . . . to raise the money for the construc-
tion and equipment of such branch or extension by increasing its
capital stock, or by issuing its bonds or notes, within the limits
prescribed by law." Here is express authority for increasing the
capital stock of the corporation. It is unreasonable to suppose
that the increase intended is limited to the amount which may be
issued without increasing the total amount of capital stock author-
ized by the original charter. A limitation of this kind would fre-
quently prevent corporations from building extensions or branches,
and defeat the public exigencies. " The limits prescribed by law,"
so far as the phrase is applicable to the increase of capital stock,
are those fixed by section 4 of the chapter and by the reasonable
necessity occasioned by the new construction and equipment. Its
force is similar to that of the same phrase in section 6, chapter
149, Public Statutes. By section 10 of the chapter, the corpora-
tion must take provisional action for providing the money required
for the purpose in view, either by voting to increase its capital
stock and securing actual, responsible subscribers therefor, or by
voting to raise the money upon a loan, or by some other means
authorized by law, and must satisfy the court of its ability to
raise the money before it is entitled to have its petition referred;
and by section 19, the corporation is authorized to raise the money
by the issue of stock, notes, or bonds after authority to build the
extension or branch has been secured. While the proceeding is
pending, the entire action of the corporation is necessarily subject
to the condition that it procure a favorable decision from the court.
It is provisional, the same as that of new corporations created
under the general law. The condition attaches to votes relating
to the financing of the enterprise, the same as to votes relating to
its inauguration and prosecution. When the decision is reached
and a record thereof is made in the office of the secretary of state,
the corporation " shall thereupon have authority " to raise the
money necessary for the purpose in the ways prescribed by section
19 — that is, shall have authority to carry into effect its prior con-
ditional action, the condition having been satisfied. .

It has been suggested that the question as to the corporation's
intention and financial ability to build the road will arise also

before the board of railroad commissioners or referees if the question of public good is sent to them for determination. It is not perceived how this can be so; but if it is so, the commissioners or referees must assume that it has already been made to appear to the court that the petitioner has the intention and ability to build the road. There will be no occasion for a further investigation of these matters. The question before them will be, "whether the public good requires the proposed railroad"— not whether it will probably be built.

The objection of the Boston & Maine Railroad to the maintenance of the petition cannot be sustained. The question remains, as to the course that shall be pursued to determine the preliminary questions mentioned in section 10. An attested copy of the record of all the proceedings of the corporation relating to the subject of the petition should be filed at the session of court to which the order of notice is returnable; also affidavits relating to facts not matters of record relevant to the preliminary questions. When no issue is raised upon these questions by an objecting party in the proceeding, there seems to be no reason why the questions may not be decided upon such testimony, the same as similar questions in other proceedings are determined under like circumstances. The affidavits should be full and explicit, and by persons having knowledge of the facts. As has been seen, the matters are not merely formal. The proceeding must be dismissed unless it appears to the court that there are financial ability and *bona fide* intention on the part of the petitioner to serve the public as proposed, should it be subsequently decided that the public good requires such service. If an issue is made upon any of these questions, an opportunity should be afforded to the objecting party to cross-examine the petitioner's witnesses and to introduce testimony. This will ordinarily be done by sending the question to a master or referee to hear the testimony and make a finding upon the issue.

No copy of the record of the petitioning corporation's proceedings relating to the building of the proposed extension and branch, and no affidavits as to the other facts, have been submitted to the court. When this is done, if it appears therefrom that the petitioner has a *prima facie* case, so far as the preliminary questions are concerned, a master or referee will be appointed to make a finding upon the issue raised upon any of such questions by the objecting party.

All concurred.